GOLDSMITH *v.* PEARCE.

1. APPEAL AND ERROR—HOMICIDE—ESTATES BY THE ENTIRETIES—
PERSONALTY—CRIMINAL LAW—FINDING OF FACT.
   Finding of trial court in suit to obtain a decree determining that
   defendant husband took no part of the personal property held
   by the wife at the time he killed her and that he took no
   part of the real estate held by them as tenants by the en-
   tireties, that wife's death was due to the criminal conduct
   of the husband *held*, sustained by record raising an inference
   that he was not mentally irresponsible until after the killing
   had occurred.

2. DESCENT AND DISTRIBUTION—HOMICIDE—PERSONAL PROPERTY.
   A husband who kills his wife may not be awarded personal prop-
   erty which she owned at the time of her death, since he may
   not be permitted to profit by the homicide.

3. SAME—HOMICIDE—ESTATES BY THE ENTIRETIES.
   An essential incident of the estate by the entireties, the unity
   of the spouses, ceases to exist upon divorce, or the death of
   either, and where the death of one spouse results from the
   criminal act of the other, the survivor is entitled to only an
   undivided 1/2 interest in the property, as such division does
   not permit the survivor to profit by the crime nor deprive
   him or her of property rights by forfeiture.

4. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.
   Neither party is entitled to costs where neither has prevailed in
   full in suit relating to property held by defendant and his
   wife at time he killed her.
   DETHMERS, C. J., and SHARPE and BOYLES, JJ., dissenting.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 16 Am Jur, Descent and Distribution § 74 *et seq.*
[1, 3] 26 Am Jur, Husband and Wife § 83.
[1, 3] Felonious killing of one cotenant or tenant by the entireties
   by the other as affecting latter's rights in the property.   32
   ALR2d 1099.
[4] 14 Am Jur, Costs § 11.

Appeal from Wayne; Murphy (George B.), J. Submitted January 4, 1956. (Docket No. 12, Calendar No. 46,063.) Decided April 2, 1956.

Bill by Ralph R. Goldsmith, administrator of the estate of Elsie Pearce, deceased, against Imogene Pearce, guardian of the estate of Theodore DeWitt Pearce, mentally incompetent, and the ward personally to terminate defendants' rights and to acquire full rights in personal property and in real estate held by entireties, following death of wife by husband's homicidal act. Decree dividing personal property and placing real estate with receiver and directing later division 1/2 to heirs of each spouse. Defendant appeals. Plaintiff cross-appeals. Reversed and decree ordered to enter providing for undivided 1/2 interest in real estate in each party.

*Harry K. Rosen* (*C. Vernon Leopold,* of counsel), for plaintiff.

*George E. Smith,* for defendant.

REID, J.    The bill in this case was filed by Ralph R. Goldsmith, special administrator, who was afterward appointed general administrator, of the estate of Elsie Pearce, deceased, and substituted as such as plaintiff, against T. DeWitt Pearce, otherwise known as Theodore DeWitt Pearce (hereinafter referred to as defendant), and his guardian. The purpose of the bill was to obtain a decree determining that defendant took no part of the personal property held by deceased wife and that he took no part in the real estate, the title to which at the time of her death, stood in the names of himself and the deceased wife, Elsie Pearce, as tenants by the entireties.

From an agreed statement of facts, it appears that defendant and said Elsie Pearce, deceased, were on

January 22, 1951, husband and wife. They had been married and lived together for a period of 29 years. On the said day, defendant killed his said wife. Her body was found in the kitchen of her home by members of the Detroit police department. Defendant was there at that time arrested on suspicion of murder. Later during the same day defendant made a formal statement to the Wayne county prosecuting attorney in the presence of the arresting officers and in said statement he "confessed to the strangling of his wife, the said Elsie Pearce, with a towel until she was dead." Defendant also mentioned an argument as occurring between defendant and his wife the night before and an argument between said parties on the morning of the said homicide. Thereupon defendant was arrested on a complaint and charged with murder in the first degree. The examining magistrate found probable cause and ordered defendant held for trial for first-degree murder of Elsie Pearce.

On Febrary 21, 1951, attorneys for defendant in the murder case moved for the appointment of a sanity commission to examine defendant in accordance with CL 1948, § 767.27 (Stat Ann 1954 Rev § 28.967). The recorder's court for the city of Detroit appointed 3 doctors to act as a commission and on March 8, 1951, they reported back to recorder's court that they had examined defendant and that, in their combined opinion, defendant was mentally unable to assist counsel in his own defense on a charge of murder. By order of the recorder's court defendant was committed to the Ionia State Hospital for the criminal insane for care and treatment. Defendant has been confined ever since to said hospital and is still confined under said order.

On March 30, 1951, Imogene Pearce, sister of defendant, was appointed guardian of defendant in the probate court for Wayne county and after due hear-

ing as to the mental capacity of the said defendant, his said sister was appointed guardian of his estate. Defendant has never been brought to trial on the charge of first-degree murder and there has never been any adjudication in the murder case heretofore spoken of.

The bill of complaint charged that the defendant unlawfully and feloniously strangled and killed his wife. The decree recited that the material allegations in the bill of complaint are true, and that the equities are with the plaintiff. The decree further ordered and decreed that defendant and his guardian be perpetually enjoined from conveying the fee or encumbering the real property in question, and decreed that defendant and his guardian are constructive trustees of 1/2 of the entirety property hereinbefore mentioned for the benefit of the heirs of the deceased wife, Elsie Pearce. The decree further appointed Lawrence Nault receiver of the goods and assets, real and personal, of defendant, with instructions to collect rents of the said real estate and apply them as follows:

"A. The payment of the mortgage, taxes and upkeep of said real property.

"B. Pay the State of Michigan for the keep of said defendant, T. DeWitt Pearce, at Ionia or to such other institution to which he may be assigned and confined.

"C. To divide the balance, if any, equally between said husband and deceased wife's estate.

"D. Upon the death of said defendant, Theodore DeWitt Pearce, surviving husband, pay 1/2 of the balance on hand and transfer the assets equally so held by him, to the credit of the heirs of the deceased wife and of the said husband."

Defendant and his guardian appealed. Plaintiff cross-appealed to this Court.

Defendants claim that there is no proof that the killing of his wife by defendant was criminal; and that the court was in error in not granting to defendant the entire interest in said real estate as sole survivor, and defendants request the court to assign the entire interest in said real estate to defendant. Plaintiff claims that the seizin in the entire estate must necessarily descend to the heirs of the victim, she having made no will.

As to defendants' claim that there was no proof of defendant's criminal conduct in the homicide, we are inclined to sustain the trial court in his finding. The parties had lived together 29 years. There is no showing that defendant exhibited any signs of insanity before the strangling occurred. It can be inferred that he was not mentally irresponsible until after the killing had occurred. As to the law governing the disposition of the assets, it is not seriously contended in this case that a crime having been established in the finding by the court, which we sustain, the personal property which she owned at the time of her death would not be awarded to her husband on the principle that he would not be permitted to profit by the homicide.

In the case of *Budwit* v. *Herr,* 339 Mich 265, this Court was evenly divided on the disposition to be made of the real estate held by the entireties by a husband and wife, the wife having been murdered by the husband, of which crime he was afterward convicted and sentenced for life in prison. Attention is invited to all of the authorities cited in each of the 2 opinions filed in that case. After having participated in the decision of the *Budwit Case,* I have carefully reconsidered the law as to the status of the title to real estate which had been held by the entireties by the wife and the husband. I reached the conclusion that I should adopt the reasoning set forth by

Justice CARR in that case. I note especially page 273 of the *Budwit Case,* where Justice CARR recites,

"Under the statute (CL 1948, § 552.102 [Stat Ann § 25.132] ) in the event that a husband and wife who are the owners of such an estate are divorced they become tenants in common of the property, except as the court may make other disposition of it. Obviously, if the theoretic unity of the spouses is destroyed, in other words if the marital relation is terminated, the estate by the entireties may not continue as such. In the instant case the marital unity was destroyed by the criminal act of defendant Harold Bauman. In view of such fact, is he entitled to claim that the entire estate vested in him following the death of his wife?"

Further, on page 281:

"Without discussing other decisions relating to the matter we conclude that the trend of authority supports the doctrine of the Florida and Missouri cases cited. As before noted, defendant Harold Bauman destroyed the marital union by his unlawful act. An essential incident of the estate by the entireties was gone. He did not, in consequence, become seized of the entire estate in his individual right. Prior to his crime he and Veda Bauman had owned it as one person. This Court in the *Garwols Case, supra* [*Garwols* v. *Bankers Trust Co.,* 251 Mich 420], rejected the theory that the legislature in the enactment of the statutes relating to the descent and distribution of property of persons dying intestate had pre-empted the field to the exclusion of common-law principles. Certainly Harold Bauman should not be permitted to profit as a result of his wrongful and criminal conduct. Granting to him an undivided 1/2 interest in the property as a tenant in common gives to him everything to which he is entitled under the situation disclosed by the record, and such result is consistent with the reasoning of this Court in the *Garwols Case, supra.* This disposition of the mat-

ter does not result in depriving him of property rights in violation of any provision of the State Constitution or of the Federal Constitution. There is no forfeiture of any estate in real property, title to which became vested in him in his individual right."

The decree of the trial court is reversed. An undivided 1/2 interest in the real estate is assigned to defendant. The other 1/2 of the title to the real estate is awarded to the heirs-at-law of the deceased wife. A decree will be entered in this Court in accordance with this opinion. Neither party having prevailed in full, neither is entitled to costs.

SMITH, KELLY, CARR, and BLACK, JJ., concurred with REID, J.

DETHMERS, C. J. (*dissenting*). I do not concur with Mr. Justice REID. For reasons stated in my opinion in *Budwit* v. *Herr,* 339 Mich 265, a decree should enter here setting aside that of the court below, providing that the personal property jointly held by defendant Theodore DeWitt Pearce and his wife, Elsie Pearce, at the time of her death, be equally divided between her estate and said defendant and, with respect to the real estate owned by them as tenants by the entireties, denying plaintiff the relief prayed, with costs to defendants.

SHARPE, and BOYLES, JJ., concurred with DETHMERS, C. J.